1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**NORTHERN DISTRICT OF CALIFORNIA**

8

**SAN JOSE DIVISION**

9

10  UNITED STATES OF AMERICA,                          Case No. 10-cr-00301-BLF-4

11              Plaintiff,

12          v.

13  JAVIER GARCIA,

14              Defendant.

15                                                      Case No. 15-cr-00288-BLF-1

16  UNITED STATES OF AMERICA,

17              Plaintiff,

18          v.

19  JAVIER GARCIA,                                      **ORDER DETERMINING THAT
                                                        EXCLUSIONARY RULE DOES NOT
20              Defendant.                              APPLY; AND DENYING
                                                        DEFENDANT'S MOTION TO
21                                                      SUPPRESS EVIDENCE**

22

23          The Ninth Circuit has remanded the above-captioned cases following Defendant Javier

24  Garcia's successful appeal of this Court's denial of his motion to suppress evidence.  This Court

25  found that police officers' initial warrantless entry into Garcia's residence was lawful under the

26  emergency aid and protective sweep exceptions to the warrant requirement, and thus that the

27  officers' subsequent entry and search of the residence pursuant to a search condition of Garcia's

28  supervised release was proper. The Ninth Circuit disagreed, concluding that neither exception to

1    the warrant requirement applied and that the initial warrantless entry of Garcia's residence

2    violated his Fourth Amendment rights.  In reversing the suppression ruling, however, the Ninth

3    Circuit noted that "[t]he district court found that no Fourth Amendment violation occurred, and as

4    such, did not consider whether the exclusionary rule applied to the seized evidence or to

5    Defendant's post-arrest statements." *United States v. Garcia*, No. 17-10071, 2018 WL 4360990,

6    at *3 (9th Cir. Sept. 13, 2018).  The Ninth Circuit remanded so that this Court could consider

7    application of the exclusionary rule in the first instance.

8          Following issuance of the mandate, this Court obtained briefing and conducted a hearing

9    on February 6, 2019.  For the reasons discussed below, the Court concludes that the exclusionary

10   rule does not apply.  Accordingly, the Court once again DENIES Garcia's motion to suppress

11   evidence.

12   **I.     BACKGROUND**

13        **A.     Search and Arrest**

14        The circumstances giving rise to the search of Garcia's residence and his subsequent arrest

15   are described in this Court's prior Order Denying Motion to Suppress ("Prior Order"), issued April

16   15, 2016.  *See* ECF 380 in Case No. 10-cr-00301, ECF 32 in Case No. 15-cr-00288.  The Prior

17   Order was issued after a lengthy evidentiary hearing, and it reflects credibility determinations and

18   other factual findings which were not disturbed by the Ninth Circuit.

19        The relevant facts as previously found by this Court are as follows:  on January 18, 2015,

20   Officers Richard Lopez and Raul Rosales were patrolling the neighborhood in which Garcia

21   resided.  Prior Order at 1-2.  The neighborhood is known for its high incidence of gang-related

22   activity, including drug trafficking, weapons violations, violence against persons, and burglaries.

23   *Id.* at 2.  The purpose of the officers' assignment was to enhance public safety in that

24   neighborhood.  *Id.*  When the events in question began, Officer Lopez was patrolling on his

25   bicycle while Officer Rosales was in a patrol car.  *Id.*

26        Officer Lopez stopped to make a cell phone call in front of 513 Fremont Street, a complex

27   comprised of multiple residential units.  Prior Order at 2.  While he was standing there, he heard

28   Officer Rosales on the radio saying that he had tried to contact two individuals and one had run

1    away holding his waistband. *Id.* Officer Rosales stated that he was pursuing on foot and that the

2    individual was headed toward Officer Lopez. *Id.* The individual who later was identified as

3    Alfonso Nevarez ran past Officer Lopez a few seconds later. *Id.* Officer Lopez did not see a

4    weapon on Nevarez. *Id.* at 2-3. Officer Lopez dropped his bicycle, drew his gun, and gave chase.

5    *Id.* at 3. Nevarez ignored commands to stop and ran through a metal screen door at the front of

6    Unit 10 of 513 Fremont Street. *Id.*

7        Officer Lopez stopped 15 to 20 feet from the entry of Unit 10. Prior Order at 3. Officer

8    Rosales arrived a minute later, and the two officers agreed that Officer Lopez would watch the

9    front door while Officer Rosales went to the back of the unit. *Id.* Officer Lopez saw a small boy

10   come from the direction of Unit 10. *Id.* Officer Lopez questioned the boy, who stated that he

11   lived in the unit and that "Poncho" was the man who had run into the unit. *Id.* Officer Lopez

12   directed the boy to get out of the way and a woman standing nearby called the boy over to her. *Id.*

13   An older woman then exited from Unit 10, shaking and appearing scared. *Id*. Officer Lopez

14   testified that he may have asked her whether anyone else was inside the unit and that he definitely

15   told her to move away from the door and out of potential line of fire. *Id.*

16       Approximately five minutes after the two officers separated, Officer Rosales informed

17   Officer Lopez by radio that Nevarez was in custody. Prior Order at 3. Nevarez had exited Unit 10

18   through a small bathroom window at the back of the unit. *Id.* Officer Lopez stayed in front of

19   Unit 10 with his gun drawn, directing bystanders to stay away. *Id.* Within minutes, Sergeants

20   Cornelison and Ross arrived. *Id.* at 3-4. The three discussed whether to enter Unit 10 without a

21   warrant and decided to enter to sweep for other people. *Id.* at 4. Officer Lopez testified that

22   although he indicated on his police report that the sweep was to check for injured persons, he also

23   believed a sweep was necessary for officer safety. *Id.*

24       The two sergeants and Officer Lopez entered Unit 10 and encountered Garcia, who was

25   coming out of a bathroom. Prior Order at 4. Garcia stated that he had been asleep, and the

26   officers observed creases on his face consistent with that statement. *Id.* The officers ordered

27   Garcia to put his hands up, which he did. *Id.* The officers handcuffed Garcia for officer safety

28   and took him outside the unit. *Id.* at 4, 19. Another officer stayed outside with Garcia while the

3

1    two sergeants and Officer Lopez quickly completed their sweep and exited the unit. *Id.* at 4. The

2    officers were inside for less than a minute and conducted only a visual search for other persons.

3    *Id.* at 16. They did not look in drawers or under furniture. *Id.*

4          The officers asked Garcia for his identity and conducted a records check which revealed

5    that he was on federal supervised release with a search condition. Prior Order at 4, 19. Pursuant

6    to the search condition, the officers searched Garcia and also re-entered Unit 10 to conduct a full

7    search of the residence. *Id.* at 4, 19. During the search of the unit, Officer Lopez found a wallet,

8    keys, and bags of what appeared to be methamphetamine all grouped together under a sleeping

9    pad on the floor of the living room. *Id.* at 4, 19. Inside the wallet, Officer Lopez discovered

10   identification belonging to Garcia and two bindles of what appeared to be methamphetamine. *Id.*

11   at 4. At that point, Garcia was placed under arrest. *Id.* at 4, 19.

12         Garcia was transported to the police station and informed of his *Miranda* rights. Prior

13   Order at 5-6. Garcia interrupted the reading of his rights multiple times, stating that he did not

14   understand his rights and also claiming that the bindles were not his. *Id.* at 6. The interview

15   proceeded, and in response to Officer Lopez's questioning Garcia identified the other members of

16   his household as his nephew, the young boy, the boy's mother (Defendant's niece), and his

17   nephew's mother (Defendant's sister). *Id.* Garcia also admitted ownership of the bindles found in

18   his wallet, stating that they were for personal use, but denied ownership of the bindles found

19   outside his wallet. *Id.* at 7.

20         **B.**     **Suppression Motion and Stipulated Facts Bench Trial**

21         At the time of Garcia's January 2015 arrest, a Probation Form 12 was pending in Case No.

22   10-cr-00301, charging him with six supervised release violations (Charges 1-6). *See* ECF 319 in

23   Case No. 10-cr-00301. The Form 12 was amended to add two additional supervised release

24   violations arising from the methamphetamine found in Garcia's residence (Charges 7 and 8). *See*

25   ECF 366 in Case No. 10-cr- 00301.

26         On May 28, 2015, a single-count indictment issued in Case No. 15-cr-00288, charging

27   Garcia with possession of methamphetamine with intent to distribute. Indictment, ECF 1 in Case

28   No. 15-cr-00288.

4

1    Garcia moved to suppress the evidence recovered from his residence and post-arrest

2    statements he made to police.  The motion was filed in both Case No. 10-cr-00301 with respect to

3    the supervised release revocation proceedings, and in Case No. 15-cr-00288 with respect to the

4    prosecution for possession of methamphetamine with intent to distribute.  *See* Motion to Suppress,

5    ECF 372 in Case No. 10-cr-00301, ECF 25 in Case No. 15-cr-00288.  As discussed above, the

6    Court denied the suppression motion in its Prior Order issued April 15, 2016.  *See* Prior Order,

7    ECF 380 in Case No. 10-cr-00301, ECF 32 in Case No. 15-cr-00288.  The denial was based on the

8    Court's conclusions that the initial warrantless entry into Garcia's residence was lawful under the

9    emergency aid and protective sweep exceptions to the warrant requirement, and thus that the

10   subsequent entry and search of the residence pursuant to a supervised release search condition was

11   proper.  *See id.*

12   Following the Court's denial of Garcia's motion to suppress, the parties agreed to proceed

13   on a stipulated facts bench trial in both cases.  *See* Joint Stipulations and Waivers, ECF 391 in

14   Case No. 10-cr-00301, ECF 46 in Case No. 15-cr-00288.  The parties stipulated to a number of

15   facts that they agreed the Government would have established based on evidence challenged in the

16   suppression motion, with the express understanding that in so stipulating Garcia had not waived

17   his right to appeal the suppression ruling.  *See id.*  The stipulated facts included the following:

18   police conducted a search of Garcia's residence on January 18, 2015; the police found Garcia's

19   wallet, which contained two bindles of what appeared to be methamphetamine, and three other

20   bindles of what appeared to be methamphetamine, under the sleeping pad where Garcia habitually

21   slept; the police arrested Garcia for possession of a controlled substance; Garcia admitted that the

22   two bindles in the wallet were his; lab testing confirmed that the five bindles contained

23   methamphetamine; the total amount of methamphetamine in the five bindles, approximately 10

24   grams, was in excess of what a methamphetamine user would be expected to have on hand for

25   personal use; and the manner in which the methamphetamine was packaged into individual bindles

26   supported an inference beyond a reasonable doubt that the methamphetamine was intended for

27   distribution.  *See id.*

28   The Court held the stipulated facts bench trial on October 25, 2016.  With respect to Case

1    No. 10-cr-00301, the Government withdrew Charge 1; Garcia admitted Charges 2-6, which were

2    unrelated to the methamphetamine; and the Court found Garcia guilty of Charges 7-8, which were

3    based on the methamphetamine found in his residence.  Criminal Minutes, ECF 393-1, 404 in

4    Case No. 10-cr-00301.  The Court revoked Garcia's supervised release and sentenced him to 24

5    months imprisonment (time served) and 12 months of supervised release.  Criminal Minutes, ECF

6    404 in Case No. 10-cr-00301.

7            With respect to Case No. 15-cr-00288, the Court found Garcia guilty on the single count

8    (Count 1) of the Superseding Indictment, charging possession of methamphetamine with intent to

9    distribute.  Criminal Minutes, ECF 48 in Case No. 15-cr-00288.  The Court sentenced Garcia to 30

10   months imprisonment and 3 years of supervised release.  Criminal Minutes, ECF 52 in Case No.

11   15-cr-00288.

12           The Court entered judgment in both cases on February 13, 2017.  Judgment on SRV, ECF

13   405 in Case No. 10-cr-00301, Judgment, ECF 55 in Case No. 15-cr-00288.

14           **C.      Ninth Circuit's Reversal of Suppression Ruling and Remand to this Court**

15           Garcia appealed the suppression ruling in both cases.  The appeals were consolidated and

16   addressed in a single memorandum decision issued September 13, 2018.  The Ninth Circuit found

17   that this Court erred in applying the emergency aid exception to the warrant requirement, because

18   the officers "lacked an objectively reasonable basis to believe that there was someone inside of the

19   residence in need of immediate assistance." *Garcia*, 2018 WL 4360990, at \*2.  The Ninth Circuit

20   also found that this Court erred in applying the protective sweep exception to the warrant

21   requirement, because there were "no facts supporting a reasonable belief that there were

22   individuals inside the house who threatened the officers' safety." *Id.* at \*3.  Absent application of

23   either exception, the initial warrantless entry violated Garcia's Fourth Amendment rights. *Id.* at

24   \*3. The Ninth Circuit reversed this Court's denial of Garcia's suppression motion on that basis,

25   but found remand "appropriate to allow the district court to consider whether the exclusionary rule

26   applies in this case in the first instance." *Id.*

27           This Court considers whether the exclusionary rule applies in each case, starting with Case

28   No. 10-cr-00301 and then turning to Case No. 15-cr-00288.

1    **II.    CASE NO. 10-cr-00301: SUPERVISED RELEASE REVOCATION PROCEEDINGS**

2    The Court's consideration of the exclusionary rule is straightforward with respect to the

3    supervised release revocation proceedings in Case No. 10-cr-00301. The Ninth Circuit has held

4    expressly that "the exclusionary rule does not apply to supervised release revocation hearings."

5    *United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000).

6    In *Hebert*, the Government instituted supervised release revocation proceedings against the

7    defendant, Hebert, based on his alleged possession of methamphetamine found during a

8    warrantless search of his apartment. *Hebert*, 201 F.3d at 1104. Hebert moved to suppress the

9    methamphetamine as the fruit of an unconstitutional search. *Id.* The district court found that the

10    officers had reasonable suspicion that Hebert was involved in criminal activity, denied the motion

11    to suppress, revoked Hebert's supervised release, and sentenced him to two years incarceration.

12    *Id.* On appeal, Hebert challenged the district court's determination that the officers conducting the

13    search had reasonable suspicion that he was involved in criminal activity. *Id.* The Ninth Circuit

14    declined to address the merits of Hebert's argument, concluding that the exclusionary rule simply

15    does not apply to supervised release revocation proceedings. *Id.*

16    At the hearing, Garcia's counsel conceded that *Hebert* governs with respect to Case No.

17    10-cr-00301. Accordingly, Garcia's motion to suppress is DENIED with respect to Case No.

18    10-cr-00301.

19    **III.    CASE NO. 15-cr-00288: POSSESSION WITH INTENT TO DISTRIBUTE**

20    The Court's consideration of the exclusionary rule is more complicated with respect to the

21    prosecution for possession of methamphetamine with intent to distribute in Case No. 15-cr-00288.

22    The Court first discusses the rule generally, and then it addresses two exceptions to the rule that

23    potentially apply here – the good faith exception and the attenuation doctrine.

24    **A.    Exclusionary Rule**

25    "The Fourth Amendment protects the right to be free from 'unreasonable searches and

26    seizures,' but it is silent about how this right is to be enforced." *Davis v. United States*, 564 U.S.

27    229, 231 (2011). The Supreme Court has filled in that gap by creating the exclusionary rule, "a

28    deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth

7

1   Amendment violation." *Id.* at 231-32. "Exclusion is not a personal constitutional right, nor is it

2   designed to redress the injury occasioned by an unconstitutional search." *Id.* at 236 (internal

3   quotation marks and citations omitted). The rule's only purpose "is to deter future Fourth

4   Amendment violations." *Id.* at 236-37.

5   "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result

6   of an illegal search or seizure," and "evidence later discovered and found to be derivative of an

7   illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016)

8   (internal quotation marks and citation omitted). The rule "almost always requires courts to ignore

9   reliable, trustworthy evidence bearing on guilt or innocence." *Davis*, 564 U.S. at 237. "And its

10  bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the

11  community without punishment." *Id.* Thus, "society must swallow this bitter pill when necessary,

12  but only as a 'last resort.'" *Id.*

13  The Supreme Court has recognized several exceptions to the exclusionary rule, including

14  two asserted by the Government here, the good faith exception and the attenuation doctrine. *See*

15  *Strieff*, 136 S. Ct. at 2016 (attenuation doctrine); *Davis*, 564 U.S. at 238 (good faith exception).

16  Those are discussed in turn, below.

17  **B.      Good Faith Exception**

18  The Supreme Court has held that "when the police act with an objectively reasonable

19  good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated

20  negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."

21  *Davis*, 564 U.S. at 238 (internal quotation marks and citations omitted). "The Court has over time

22  applied this 'good-faith' exception across a range of cases." *Davis*, 564 U.S. at 232 (exception

23  applied when police conducted a search in compliance with then-binding precedent that later was

24  overruled); *see also Herring v. United States*, 555 U.S. 135, 136-37 (2009) (exception applied

25  when police officer reasonably but mistakenly believed that there was an outstanding arrest

26  warrant due to another's bookkeeping error); *Illinois v. Krull*, 480 U.S. 340, 342 (1987) (exception

27  applied when officers relied on a statute that subsequently was invalidated); *United States v. Leon*,

28  468 U.S. 897, 900 (1984) (exception applied when officers relied on facially valid search warrant

8

1　　later found to be unsupported by probable cause).

2　　　　　The Government urges the Court to apply the good faith exception here, arguing that "the

3　　officers in this case were operating in good faith when they entered Defendant's apartment for

4　　public safety reasons."  Gov't's Brief at 7, ECF 463 in Case No. 10-cr-00301, ECF 103 in Case

5　　No. 15-cr-00288.  Garcia argues that the officers' conduct "cannot reasonably be characterized as

6　　good faith.  Rather, it is deliberate, reckless, or grossly negligent."  Def.'s Brief at 8, ECF 466 in

7　　Case No. 10-cr-00301, ECF 106 in Case No. 15-cr-00288.  Garcia asserts that a reasonable police

8　　officer would have known that the conduct in question violated Garcia's constitutional rights.

9　　Finally, Garcia contends that the cases applying the good faith exception are factually

10　　distinguishable from the present case.

11　　　　　In evaluating these arguments, the Court relies on the Ninth Circuit's determinations set

12　　forth in its memorandum decision as well as this Court's own factual findings set forth in its Prior

13　　Order and left undisturbed by the Ninth Circuit.  The Court notes that some of Garcia's arguments

14　　are based on a version of events which conflicts with this Court's prior factual findings.  For

15　　example, Garcia asserts that he was arrested inside his residence while this Court found that he

16　　was arrested outside his residence.  *Compare* Def.'s Brief at 3 (asserting that arrest was inside the

17　　residence) *with* Prior Order at 19 (finding that arrest was outside the residence).  The Ninth Circuit

18　　expressly declined to consider Garcia's factual contention that he was arrested inside his

19　　residence.  *See Garcia*, 2018 WL 4360990, at *3.  To the extent that Garcia is attempting to

20　　relitigate this Court's prior factual findings, Garcia's arguments are outside the scope of the

21　　remand.  At the hearing on remand, the Court stated its view that Garcia received a full evidentiary

22　　hearing on his suppression motion and that neither party had asked for a further evidentiary

23　　hearing.  Counsel for both sides agreed.

24　　　　　This Court nonetheless agrees with Garcia that the good faith exception cannot be applied

25　　here.  The Court credited Officer Lopez's testimony regarding the officers' conduct and

26　　motivations, and it sees no reason to disturb that credibility finding.  *See* Prior Order at 1.

27　　However, the officers' subjective belief in the legality of their conduct is immaterial, as the good

28　　faith exception is governed by an objective standard.  The Ninth Circuit determined that "the

9

1    police had *no reason* to believe that anybody remained inside the residence – much less somebody

2    violent or injured," *Garcia*, 2018 WL 4360990, at \*2 (emphasis added), and that there were "*no*

3    *facts* supporting a reasonable belief that there were individuals inside the house who threatened the

4    officers' safety," *id*. at \*3 (emphasis added).  Given those determinations, this Court cannot find

5    that the officers acted with an "objectively reasonable good-faith belief" that the warrantless entry

6    was lawful.  *See Davis*, 564 U.S. at 238.

7          Moreover, the Supreme Court cases establishing and applying the good faith exception

8    involved officers' reliance on facially valid authority for the search, such as then-binding

9    precedent, *see Davis*, 564 U.S. at 232, a statute that subsequently was invalidated, *see Krull*, 480

10   U.S. 342, or a facially valid search warrant, *see Leon*, 468 U.S. at 900.  It is not at all clear that

11   those holdings could be stretched to encompass the present case, which is completely

12   distinguishable on its facts, even if this Court could conclude that the officers acted in an

13   objectively reasonable manner.

14         Accordingly, the Court concludes that the good faith exception to the exclusionary rule

15   does not apply.

16         **C.      Attenuation Doctrine**

17         Under the attenuation doctrine, "[e]vidence is admissible when the connection between

18   unconstitutional police conduct and the evidence is remote or has been interrupted by some

19   intervening circumstance, so that the interest protected by the constitutional guarantee that has

20   been violated would not be served by suppression of the evidence obtained."  *Strieff*, 136 S. Ct. at

21   2061 (internal quotation marks and citation omitted).  Application of the attenuation doctrine is

22   guided by the three factors articulated in *Brown v. Illinois*, 422 U.S. 590 (1975).  *Strieff*, 136 S. Ct.

23   at 2062.  The Supreme Court recently summarized the *Brown* factors in *Utah v. Strieff*, as follows:

24   (1) "the 'temporal proximity' between the unconstitutional conduct and the discovery of

25   evidence"; (2) "'the presence of intervening circumstances'"; and (3) "'the purpose and flagrancy

26   of the official misconduct.'"  *Strieff*, 136 S. Ct. at 2062 (quoting *Brown*, 422 U.S. at 603-04).

27         In *Strieff*, an anonymous person called the police with a tip of "narcotics activity" at a

28   particular residence.  *Strieff*, 136 S. Ct. at 2059.  Officer Fackrell conducted intermittent

10

1    surveillance of the residence for approximately one week. *Id*. He observed visitors arriving and

2    leaving after only a few minutes at a frequency which suggested drug transactions. *Id*. Officer

3    Fackrell observed one such visitor, Strieff, exit the residence and walk toward a nearby

4    convenience store. *Id*. at 2060. Officer Fackrell detained Strieff in the store parking lot, asked

5    what he was doing at the residence, and asked for his identification. *Id*. Upon checking the

6    identification with the police dispatcher, Officer Fackrell discovered that Strieff had an

7    outstanding arrest warrant for a traffic violation. *Id*. Officer Fackrell then arrested Strieff

8    pursuant to the warrant, searched him incident to the arrest, and discovered a baggy of

9    methamphetamine and drug paraphernalia. *Id*.

10        The state trial and appellate courts concluded that the evidence was admissible, but the

11   state supreme court reversed. The United States Supreme Court "granted certiorari to resolve

12   disagreement about how the attenuation doctrine applies where an unconstitutional detention leads

13   to the discovery of a valid arrest warrant." *Strieff*, 136 S. Ct. at 2060. Assuming without deciding

14   that Officer Fackrell lacked reasonable suspicion for the initial stop, the Supreme Court applied

15   the three *Brown* factors to determine whether the evidence nonetheless was admissible under the

16   attenuation doctrine. *Id*. at 2062.

17        With respect to the first factor, temporal proximity, the Supreme Court observed that it

18   generally has "declined to find that this factor favors attenuation unless 'substantial time' elapses

19   between an unlawful act and when the evidence is obtained." *Strieff*, 136 S. Ct. at 2062. The first

20   factor clearly favored suppression because Officer Fackrell discovered the drug contraband only

21   minutes after the illegal stop. *Id*.

22        With respect to the second factor, the presence of intervening circumstances, the Supreme

23   Court noted that the arrest warrant was valid, predated the drug investigation, and was

24   unconnected to the stop. *Strieff*, 136 S. Ct. at 2062. Characterizing a warrant as "a judicial

25   mandate to an officer to conduct a search or make an arrest," the Supreme Court found that "arrest

26   of Strieff thus was a ministerial act that was independently compelled by the pre-existing

27   warrant." *Id*. at 2062-63. The Court reasoned that "once Officer Fackrell was authorized to arrest

28   Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect Officer

11

1    Fackrell's safety." *Id*. at 2063. Under those circumstances, the Supreme Court found that the

2    second factor "strongly" favored application of the attenuation doctrine to permit admission of the

3    evidence. *Id*. at 2062.

4         With respect to the third factor, the purpose and flagrancy of the official misconduct, the

5    Supreme Court found that Officer Fackrell had not observed when Strieff entered the suspected

6    drug house, and therefore lacked a sufficient basis to conclude that Strieff was a short-term visitor

7    who may have been engaged in a drug transaction. *Strieff*, 136 S. Ct. at 2063. Also, Officer

8    Fackrell should have asked, rather than demanded, to speak with Strieff in the store parking lot.

9    *Id*. However, the Supreme Court characterized Officer Fackrell's conduct as "at most negligent,"

10   holding that Officer Fackrell's "errors in judgment hardly rise to a purposeful or flagrant violation

11   of Strieff's Fourth Amendment rights." *Id*. Important to the Court's reasoning was the absence of

12   any indication that the unlawful stop was part of systemic or recurrent police misconduct. *Id*.

13   Also important to the analysis was that after the unlawful stop, Officer Fackrell's conduct was

14   lawful. *Id*. His decision to run a warrant check was a precaution for officer safety, and his actual

15   search of Strieff was a lawful search incident to arrest. *Id*.

16        After weighing the three *Brown* factors, the Supreme Court held "that the evidence

17   discovered on Strieff's person was admissible because the unlawful stop was sufficiently

18   attenuated by the pre-existing arrest warrant." *Strieff*, 136 S. Ct. at 2063. While acknowledging

19   that the first factor favored suppression, the Supreme Court concluded "that consideration is

20   outweighed by two factors supporting the State." *Id*.

21        The present case is indistinguishable from *Strieff* in all meaningful respects. As to the first

22   factor, temporal proximity, the officers in the present case discovered the drugs in Garcia's

23   residence only minutes after the initial unlawful entry, just as Officer Fackrell discovered the drug

24   contraband on Strieff only minutes after the initial unlawful stop. Consequently, for the reasons

25   articulated in *Strieff*, the first factor favors suppression.

26        As to the second factor, the presence of intervening circumstances, the officers in the

27   present case detained Garcia, called in his identification, and discovered his supervised release

28   search condition, just as Officer Fackrell detained Strieff, called in his identification, and

United States District Court
Northern District of California

12

1    discovered the outstanding arrest warrant.  While the present case involves a supervised release

2    search condition rather than the arrest warrant discussed in *Strieff*, this Court perceives no

3    difference between the two for purposes of the attenuation doctrine.  Pursuant to the search

4    condition, the officers had unfettered discretion to search Garcia's "person, residence, office,

5    vehicle, or any property under his control . . . at any time with or without cause."  Judgment at p.

6    4, ¶ 7, ECF 164 in Case No. 10-cr-00301.  Moreover, just as the arrest warrant was valid, predated

7    the drug investigation, and was unconnected to the stop in *Strieff*, the search condition was valid,

8    predated the events in question, and was unconnected to the initial warrantless entry of Garcia's

9    residence.  This Court therefore concludes that, for the same reasons that the arrest warrant

10   discovered after the unlawful stop was an intervening circumstance in *Strieff*, the search condition

11   discovered after the initial unlawful entry was an intervening circumstance in the present case.

12          As to the third factor, the purpose and flagrancy of the official misconduct, the officers in

13   the present case made errors in judgment of the same type as those made by Officer Fackrell in

14   *Strieff*.  In the present case, Officers Lopez and Rosales were patrolling Garcia's neighborhood

15   because it was known for gang-related activity, including drug trafficking.  In *Strieff*, Officer

16   Fackrell was watching a residence for drug trafficking.  Officer Fackrell erred in stopping Strieff

17   because he "lacked a sufficient basis to conclude that Strieff was a short-term visitor who may

18   have been consummating a drug transaction."  *Strieff*, 136 S. Ct. at 2063.  Similarly, in the present

19   case the Ninth Circuit held that the officers "lacked an objectively reasonable basis to believe that

20   there was someone inside of the residence in need of immediate assistance," and lacked

21   "reasonable suspicion that *any* person remained in the unit."  *Garcia*, 2018 WL 4360990, at *2-3.

22   While acknowledging Officer Fackrell's mistake, however, the Supreme Court found that the error

23   did not "rise to a purposeful or flagrant violation of Strieff's Fourth Amendment rights."  *Strieff*,

24   136 S. Ct. at 2063.  This Court likewise finds that while Officer Lopez and the sergeants erred in

25   entering Garcia's residence without a warrant, that error did not rise to a purposeful or flagrant

26   violation of Garcia's Fourth Amendment rights.

27          Garcia does not attempt to distinguish *Strieff* in his brief, and in fact his brief does not

28   address *Strieff* at all.  The brief instead cites to decisions from the Seventh Circuit and the District

1  of New Mexico for the propositions that the third *Brown* factor is the most important to the

2  attenuation analysis and that the Court must consider the officers' conduct both before and after

3  the constitutional violation. *See United States v. Conrad*, 673 F.3d 728, 735 (7th Cir. 2012)

4  ("[The third] factor considers both the conduct before and after the constitutional violation.");

5  *United States v. Ramos*, 194 F. Supp. 3d 1134, 1163 (D.N.M. 2016) (third factor is particularly

6  significant). Garcia argues that the events leading up to the warrantless entry demonstrated

7  flagrant misconduct on the part of the officers. He asserts that Officer Rosales saw two men

8  talking and told them to sit on the curb based on nothing more than speculation that they were

9  engaged in criminal activity. He also asserts that Officer Rosales chased Nevarez for no good

10 reason. According to Garcia, because the officers were abusing their authority at the start of the

11 chain of events, it is more likely that the officers' later violation of Garcia's constitutional rights

12 was purposeful and flagrant.

13     Garcia cites no evidence in support of his argument. Even if the Court were to accept

14 Garcia's characterization of Officer Rosales's conduct, Officer Lopez testified that he did not learn

15 the details of Officer Rosales's interaction with Nevarez and the other individual until after the

16 warrantless entry. Hrg. Tr. 21:20-23:18, ECF 426 in Case No. 10-cr-00301, ECF 77 in Case No.

17 15-cr-00288. Officer Lopez testified that Officer Rosales later said that he (Rosales) had seen two

18 individuals and ordered them to sit on the curb, and that one ran away. *Id*. 21:25-22:4. Officer

19 Lopez also read Officer Rosales's police report. *Id*. at 22:14-20. However, there is no indication

20 on this record that Officer Lopez and the two sergeants who conducted the warrantless entry were

21 involved in or had knowledge of Officer Rosales's alleged abuse of authority in directing Nevarez

22 and the other individual to sit on the curb. It is clear, even from Garcia's recitation of events, that

23 the police were not targeting Garcia and in fact did not know of his existence when they entered

24 his residence. The facts of this case therefore favor attenuation at least as strongly as did the facts

25 in *Strieff*, where Officer Fackrell specifically targeted Strieff for the unlawful stop based on his

26 association with the suspected drug house.

27     In the Court's view, *Strieff* is on all fours with the present case. As did the Supreme Court

28 in *Strieff*, this Court finds that the first *Brown* factor favors suppression of the evidence, but that

14

the second and third *Brown* factors strongly favor admission of the evidence under the attenuation doctrine. Accordingly, the Court concludes that the exclusionary rule does not apply and that the evidence seized from Garcia's residence is admissible in Case No. 15-cr-00288.

## IV. ORDER

Having concluded that the exclusionary rule does not apply in either Case No. 10-cr-00301 or Case No. 15-cr-00288, the Court once again DENIES Garcia's motion to suppress evidence in both cases.

Dated: February 21, 2019

_____
BETH LABSON FREEMAN
United States District Judge